UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-1-16

YUDELKA E. PEREZ, et al.,

    **Plaintiffs,**

   - against -

**ISABELLA GERIATRIC CENTER, Inc.,**

    **Defendant.**

**REPORT AND
RECOMMENDATION**

**13-CV-7453 (RA) (RLE)**

**TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:**

## I. INTRODUCTION

Plaintiffs Yudelka Perez ("Perez") and Maritza Cortes ("Cortes," and, collectively, "Plaintiffs") filed this lawsuit on October 22, 2013, seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendant Isabella Geriatric Center, Inc. ("Isabella"). Plaintiffs worked as Certified Nursing Assistants ("CNAs") in Isabella's nursing home located on Audubon Avenue in Northern Manhattan ("main campus"). Plaintiffs allege that Isabella "follows a standard policy of paying CNAs only for the hours they are scheduled, and shorting CNAs of time that they actually work when their heavy work load forces CNAs to start work early, work late, or work through lunch." (Doc. No. 114 (Plaintiffs' Memorandum of Law in Support of their Motion for Rule 23 Certification) ("Pls.' Mem.") at 1.) Accordingly, they contend that "Isabella only pays Plaintiffs and other CNAs for their scheduled hours even when its own time records show the CNAs working before or after their scheduled shifts." (*Id.*) Isabella argues that "the record is clear" that its policies "were lawful and in fact, designed to ensure that CNAs punched in and out properly and were paid overtime when authorized." (Doc. No. 123 (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Rule 23 Certification) ("Def.'s Mem.") at 1.)

Plaintiffs now move to certify a class consisting of all individuals employed by Isabella as CNAs at its main campus at any time from October 22, 2007 (six years prior to the filing of the Complaint), to the present (the "Class Period"). (Doc. No. 108 Notice of Motion for Certification of Plaintiffs' New York Labor Law Claims as a Class Action Pursuant to Rule 23); Pls.' Mem. at 3.) Isabella opposes Plaintiffs' motion, and moves to decertify the FLSA collective action, which was conditionally certified by the undersigned on July 1, 2014. (Doc. No. 110 (Notice of Motion to Decertify the Conditional Class).)

For the reasons that follow, I recommend that Plaintiffs' motion to certify the class be **GRANTED** and that Isabella's motion to decertify the FLSA collective action be **DENIED**.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    CNAs' Job Duties and Supervision

Plaintiffs Perez and Cortes are former CNAs in Isabella's 705-bed, two-building nursing home. (Doc. No. 109 (Declaration of David Harrison) ("Harrison Decl.") at ¶ 4.) CNAs at Isabella may be assigned to work in either of the buildings, with some assigned to "float" where needed. (Pls.' Mem. at 3 (citing Affirmation of John S. Ho ("Ho Aff."), Ex. K (Deposition Transcript of Izora Pettway) ("Pettway Tr.") 33:21-25).) All CNAs are charged with caring for the basic daily needs of nursing home residents, such as helping with personal hygiene and grooming; maintaining the cleanliness of residents' rooms; serving and assisting residents during meals; answering call bells; observing residents' urine and bowel habits; assisting residents with walking; assuring the safety of residents at all times; and caring for residents' "special needs" "as assigned." (Harrison Decl., Ex. Y at 2; Ho Aff., Ex. X-AA (Job Descriptions of CNAs).) All CNAs are also required to document their work in a computer system called the ADL system and

sometimes also in books. (Pls.' Mem. at 8, n. 54). Some CNAs have specialized job descriptions with additional, specialized tasks related to resident care. (Ho Aff., Ex. Y-AA.) For example, a "Certified Nursing Assistant/Oxygen" is responsible for providing resident care and for "maintaining and servicing equipment and supplies that provide oxygen to the resident." (Ho Aff., Ex. Y.) The job description for each specialized CNA position incorporates the regular resident care duties, either directly or by reference to the standard CNA job description. (*Id.*, Ex. Y-AA.)

Pursuant to the CNA job descriptions, CNAs report to the head or charge nurse. (Ho Aff., Ex. X-AA; Harrison Decl., Ex. Y.) In addition to caring for residents, charge nurses are also responsible for "making daily resident assignments" and "setting the times for which CNAs can take their meal breaks." (Ho Aff. at ¶ 29 (citing Doc. No. 112 (Declaration of Miriam Paul) ("Paul Decl.") at ¶ 7).) Charge nurses do not, however, have the power to "hire, fire, set pay rates or methods of payment, approve overtime, approve or deny vacation requests, give raises or promotions, make demotions, evaluate the performance of other employees, or discipline employees." (*Id.* (citing Paul Decl. at ¶ 9).) Rather, Director of Nursing Miriam Paul ("Director Paul") has the authority to enforce the hours of work and the schedule policy in the Nursing Department, which includes CNAs; set staffing levels; sign off on CNA payroll; administer the payroll budget; and sign off on the discipline of CNAs. (Pls.' Mem. at 4 (citing Ho. Aff. Ex. R (Deposition Transcript of Miriam Paul ("Paul Tr.") 43:10-59:12; Harrison Decl., Ex. E (Deposition Transcript of Leticia Casiano) ("Casiano Tr.") 48:17, 66:23-24; Harrison Decl. Ex. D (Deposition Transcript of Eileen Casey) ("Casey Tr.") 48:17-21.).)

## 2.   Isabella's Relevant Policies

CNAs at Isabella work either full- or part-time shifts. Pursuant to a Collective Bargaining

Agreement ("CBA")[1] and Isabella's Employee Handbook ("Handbook"), full-time CNAs work a regular week of 37.5 hours, and are entitled to an overtime rate of time and one-half their hourly rate for "all authorized hours worked in excess of their regularly scheduled work day or shift." (Doc. No. 111 (Defendant's Memorandum of Law in Support of its Motion to Decertify the Conditional Class) ("Def.'s Decert. Mem.") at 9.) Full-time CNAs are assigned one of three eight-hour shifts: the day shift, from 7:30 a.m. to 3:30 p.m.; the evening shift, from 3:30 p.m. to 11:30 p.m.; and the night shift, from 11:30 p.m. to 7:30 a.m. (Pls.' Mem. at 6, citing Cortes Tr. 27:6-11.) Part-time CNAs are generally scheduled to work four- or five-hour shifts, although they can also be assigned to eight-hour shifts. (Pls.' Mem. at 6 (citing Ho Aff., Ex. L (Deposition Transcript of Elizabeth Radovich) ("Radovich Tr.") 18:22-19:1;  Casiano Tr. 28:18-22, 65:9-14; Ho. Aff., Ex. N (Deposition Transcript of Mercedes Rosario) ("Rosario Tr.") 33:9-13; Ho. Aff., Ex. I (Deposition of Yvette Morris) ("Morris Tr.") 56:15-57:12.).) CNAs are required to clock in and at the beginning and clock out at the end of each shift using an ADP time clock that reads their thumb prints. (Def.'s Decert. Mem. at 10.) The policy in the Handbook states, "Your recorded time is the basis of your pay…You should not clock in earlier than 15 minutes before the start of your shift. You may not begin work before the start of your shift without the written permission of your supervisor." (Id. (citing Ho Aff., Ex. V (Employee Handbook) ("Handbook") at 38).)

Additionally, CNAs who work more than six hours are entitled to both a thirty minute unpaid meal break and two paid fifteen minute breaks. (Ho Aff. ¶ 25.) CNAs may elect to combine the paid break periods with the unpaid meal break, for a combined one-hour break. (Ho Aff. ¶ 26.) Regardless of how breaks are taken by individual CNAs, Isabella has an "auto-deduct

---

[1] Isabella and its workers were covered by a CBA entered into by the League of Voluntary Hospitals and Homes of New York and 1199SEIU Healthcare Workers East from June 1, 2009, through April 30, 2015. (Ho. Decl., Ex. U ("CBA").)

policy," under which a half hour meal period is deducted from a CNA's regularly scheduled six-hour shift, "unless overtime is authorized or a CNA notifies his/her supervisor that s/he worked more than 30 minutes of their meal period." (Harrison Decl., Ex. C (Deposition Transcript of Carmen Bourdony) ("Bourdony Tr.") 62:19-63:2; Ho Aff. at ¶ 22 (citing CBA at 52; Ho Aff., Ex. S (Declaration of Eileen Casey) ("Casey Decl.") ¶ 19; Ho Aff. Ex. T (Declaration of Miriam Paul in support of Defendant's Opposition to Plaintiffs' Motion for Conditional Certification) ("Paul Conditional Decl.") ¶¶ 19-20.) Charge nurses are responsible for setting the CNAs' meal and break periods during their assigned shifts. (Ho Aff. at ¶ 9.)

## B.    Procedural History

On July 1, 2014, the undersigned granted Plaintiffs' motion for a conditional collective action, finding that the Plaintiffs had met the "modest factual showing" necessary for certification, because they had shown that there were potentially "similarly situated employees" to the named Plaintiffs. (Doc. No. 44, citing 29 U.S.C. § 216(b); *Weng Long Liu v. Rong Sing. Inc.*, No. 12-CV-7136 (TPG), 2014 WL 1244676, at *1 (S.D N.Y. Mar. 26, 2014).) Following discovery, Isabella moved to dismiss certain opt-in Plaintiffs pursuant to Federal Rule of Civil Procedure 37(d). (*See* Report and Recommendation of the undersigned at Doc. No. 144, adopted by the Court at Doc. No. 160.) On October 15, 2015, Plaintiffs moved to certify the class under Federal Rule of Civil Procedure 23. (Doc. No. 108.) That same day, Isabella moved for decertification of the conditional collective class. (Doc. No. 110.)

## III.    PLAINTIFFS' CLAIMS

### A.    Plaintiffs' NYLL Claims Are Properly Before The Court

Plaintiffs allege that because Isabella "understaffed its nursing home" and because of the large volume of work that CNAs were required to do, they often did not have enough time during their regularly scheduled work shifts to perform all of the work they were expected to complete.

(Doc. No. 1 (Complaint) ("Compl.") ¶ 22.) "As a result, they regularly performed unpaid work outside their regularly scheduled shifts *and* during their unpaid meal breaks." (*Id.* (emphasis in original).) Plaintiffs contend that Isabella's failure to pay the CNAs for all hours worked violated NYLL § 191. Isabella, characterizing Plaintiffs' allegations as an "attack [on] Isabella's lawful rounding policy," argues that Plaintiffs' claims, as articulated in the instant class certification motion, are not properly before the Court because the Complaint was "insufficient to put the Defendant on notice of a rounding claim." (Def.'s Mem. at 11.) For the reasons that follow, the Court disagrees, and finds that Plaintiffs' claims are properly before the court.

### 1.    Work Outside of Scheduled Shifts

Under federal law, an employer may not "suffer or permit[]" an employee to work without compensation for all hours worked. 29 CFR § 785.11. Similarly, the New York State Department of Labor has interpreted NYLL § 191 to require "that employees be paid for all hours worked." NY DOL Opinion Letter RO-09-0129 at 3 ("Employees must be paid for all hours suffered or permitted to work regardless of whether such time was approved or in disregard of the employer's policies.")).) Section 191 requires that employees[2] "be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. LAB. LAW § 191(1)(d) (Consol. 2016). "All employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action[.]" N.Y. LAB. LAW § 198(3) (Consol. 2016).

Following full discovery, Plaintiffs allege that "Despite the existence of exact time records that show the minute that each CNA clocked in and out, through the Class Period,

---

[2] Clerical and other workers not classified as manual workers, railroad workers, or commission salespersons. N.Y. LAB. LAW § 191(1)(d) (Consol. 2016).

Isabella has maintained a uniform policy of not paying CNAs for time that they work on the clock before and after their scheduled shifts." (Pls.' Mem. at 11 (citing Casiano Tr. 63:9-64:7).) CNAs testified to routinely arriving at work punching in before their scheduled shifts, and punching out and leaving after their scheduled shifts, in order to accomplish all of their job duties. (Pls.' Mem. at 9 (citing Ho Aff., Ex. D (Deposition Transcript of Maria Almonte) ("Almonte Tr.") 32:8-12; Ho Aff. Ex. E (Deposition Transcript of Leticia Foster) ("Foster Tr.") 131:3-15).) Payroll supervisor for Isabella, Leticia Casiano ("Casiano") testified, however, that CNAs were not paid for any hours worked outside their scheduled shifts unless the extra hours had been authorized by Director Paul, and that she could not recall any occasions when such hours were actually authorized for full-time CNAs. (Casiano Tr. 51:6-17; 63:19-25.)

Isabella contends that Plaintiffs' claim that they were not compensated for pre- or post-shift work is not properly before the Court, arguing that the "Complaint makes no reference whatsoever to Isabella's rounding policy, nor did any Plaintiff testify regarding an injury arising from a rounding policy or to the existence of a rounding policy at all." (Def.'s Mem. at 11.) Under Federal Rule of Civil Procedure 8(a), "a plaintiff need only 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Beltre v. Lititz Healthcare Staffing Solutions LLC*, 757 F. Supp. 2d 373, 377-378 (S.D.N.Y. 2010) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). *See also Littlejohn v. City of New York*, 795 F.3d 297, 308-09 (2d Cir. N.Y. 2015) (quoting *Swerkiewicz v. Sorema*, 534 U.S. 506, 511 (2002)) ("'under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case.' ... The complaint needed only to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'").

The Court finds that the Complaint gave Isabella sufficient notice of the claims

articulated in the class certification motion, and that is current claims are properly before the
Court. While the Complaint specifically alleges that Plaintiffs performed work "off-the-clock," it
also generally alleges that Plaintiffs and putative class members regularly performed unpaid
work outside of their regularly scheduled shifts. (Compl. ¶ 22 ("[Plaintiffs and putative class
members] regularly performed unpaid work outside their regularly scheduled shifts and during
their unpaid meal breaks (emphasis omitted)); ¶ 24 ("Defendant also failed to compensate
Plaintiffs…for time they worked off-the-clock – i.e. before and/or after their regularly scheduled
eight-hour shifts"); ¶ 39 ("[Plaintiffs] were not compensated for all hours worked up to forty
hours and for all overtime hours worked as required by 12 NYCRR § 142-2.2.")

While the claim that Plaintiffs were not paid for all of the time worked while "on the
clock" is now more specific after the Parties have engaged in full discovery, the claim is
nevertheless encompassed within the broader language in the Complaint and thus properly before
the Court. Moreover, as Plaintiffs point out, Isabella's own inclusion of the "lawful rounding
policy" language in its opposition to conditional FLSA Collective certification in May 2014,
undermines their assertion that they have not been on notice of Plaintiffs' "on the clock" claims.
(Doc. No. 133 (Plaintiffs' Reply Memorandum of Law in Support of their Motion for Rule 23
Certification) ("Pls.' Reply Mem.") at 5, citing Doc. No. 38 at 8-9.) Furthermore, deposition
testimony, as well as discussions between the Parties and the Court throughout the course of
discovery, demonstrates that Isabella was fairly apprised of the nature of Plaintiff's claim from
the beginning of the litigation. Accordingly, the Court will consider Plaintiffs' claim of unpaid
"on the clock" hours within the context of the instant motions.

### 2.    Meal Breaks

Isabella does not dispute that Plaintiffs' meal break claims were adequately pled in their
Complaint. Courts in this Circuit have recognized that, under the Fair Labor Standards Act,

8

"automatic meal deduction policies are not *per se* illegal." *Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, 10-CV-1741 (DLI) (JO), 2012 U.S. Dist. LEXIS 40288, at *27 (E.D.N.Y. Mar. 23, 2012) (quoting *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 2012 U.S. Dist. LEXIS 21654, 2012 WL 566255, at *7 (E.D.N.Y. Feb. 16, 2012) and citing *Fengler v. Crouse Health Found.*, Inc., 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009)). Rather "[i]t is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the Act." *Ellis*, 2012 U.S. Dist. LEXIS 40288, at *27 (quoting *Fengler*, 595 F. Supp. 2d at 195). Plaintiffs argue that such a failure also violates NYLL § 191's requirement that employees be paid for all hours worked. (Pls.' Mem. at 14.)

Isabella has a policy of automatically deducting a thirty-minute meal break from six hour shifts. During discovery, CNAs testified that they often worked during their meal periods to serve residents their own meals, or to ensure that they had enough time to complete their duties by the end of the shift. (Pls.' Mem. at 9 (citing Ho Aff., Ex. A (Deposition Transcript of Ana Paulino) ("Paulino Tr.") 109:13-18 ("she had 'to serve the lunch, take the trays to the residents. And if you have any resident to feed, you must feed the resident"); Radovich Tr. 40:11-21 ("it was understood that, if you got 4:00 a.m. [lunch break], you couldn't take a full hour because that wouldn't leave you enough time to do your morning duties…").) Plaintiffs allege that the charge nurses were aware that CNAs were working through breaks and that their knowledge can be imputed to Isabella. (Doc. No. 125 (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Decertify Conditional Class) ("Pls.' Decert. Opp. Mem.") at 5.)

Casiano testified that there is no way for her to override the automatic deduction. (Casiano Tr. 56:9-10.) Similarly, Carmen Bourdony, a staffing clerk who was in charge of

running payroll at Isabella during the proposed Class Period, testified that she has no authority to pay for the extra time if CNAs have to work through their lunch. (Pls.' Mem. at 12 (citing Bourdony Tr. 51:25-52:12).) Plaintiffs contend that Isabella's failure to implement any method for the individuals running payroll to override the automatic meal deduction, knowing that some CNAs worked through their lunch breaks, is a violation of NYLL.

## IV.    PLAINTIFFS' CLASS CERTIFICATION MOTION

### A.  Legal Standard Under Rule 23

Plaintiffs bear the burden of establishing the four prerequisites to obtaining class certification under Rule 23(a):

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Generally, the elements are known as "numerosity, commonality, typicality, and adequacy." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

The proponent must also show that class certification is appropriate under one of the 23(b) subdivisions. *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Here, Plaintiffs rely on Rule 23(b)(3), which requires the Court to find that  (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "As a general matter, the Rule 23(b)(3) predominance

inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Augustin v. Jablonsky, (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 225 (2d Cir. 2006)).

The party seeking class certification must establish the Rule 23 requirements by a preponderance of the evidence. *Pa. Pub. Sch. Emples. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2014) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201 (2d Cir. 2008)). The Court must "assess all of the relevant evidence admitted at the class certification stage, [] resolve[] factual disputes relevant to each Rule 23 requirement, and find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established, notwithstanding an issue's overlap with the merits." *Teamsters*, 456 F.3d at 202 (internal quotes omitted).

"A motion for class certification should not, however, become a mini-trial on the merits." *Lewis Tree Serv. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002). "The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Tiro v. Pub. House Invs.*, LLC, 288 F.R.D. 272, 277-78 (S.D.N.Y. 2012) (citing *Kowalski v. YellowPages.com, LLC*, No. 10 CIV. 7318 (PGG), 2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. Mar. 31, 2012); *Lewis Tree Serv.*, 211 F.R.D. at 231).

## B.  The Rule 23 Requirements as Applied to This Case

### 1.  Numerosity

Generally, "[n]umerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emples. Ret. Sys*, 772 F.3d at 120. "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant must show some evidence of or

reasonably estimate the number of class members." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (internal quotations and footnotes omitted).

Isabella identified 762 individuals who were employed as CNAs on their main campus during the Class Period. (Harrison Decl. ¶¶ 9, 13.) Plaintiffs contend that this number is "more than sufficiently numerous to meet the requirements of Rule 23(a)(1)." (Pls.' Mem at 17.) Isabella argues that the record lacks "credible evidence" that numerosity is met, and that Plaintiffs only point to the number of CNAs in the last six years to support their assertion of numerosity. (*Id.* (citing *Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923, 924 (9th Cir. Cal. 1986) (ERISA case, upholding lower court's finding that there was insufficient evidence of numerosity where plaintiff pointed to the number of workers who lost their jobs but did not supply evidence of how many were entitled to receive pensions under company policies).)

*Siles* is inapposite to the current case. Isabella's reliance on the case is not only misplaced but questionable. In *Siles,* the plaintiff's "only evidence of numerosity was that 31,000 employees covered by the plan lost their jobs in 1974 and 1975." 783 F.2d at 924. There was "no evidence regarding how many of these employees" were denied benefits for the same highly specific reasons that the plaintiff's benefits had been denied. *Id.* In contrast, the record here contains credible evidence to support a reasonable inference that the 762 current and former CNAs were impacted by Isabella's uniform practices of automatically deducting a thirty-minute meal break from shifts over six hours and failing to pay CNAs for "unauthorized" hours outside of their regularly scheduled shifts. Accordingly, numerosity is satisfied.

### 2.    Commonality and Typicality

Rule 23(a) requires plaintiffs "to show that there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims "must depend on a common contention," that is "central to the validity" of all class members' claims, and that is "capable of classwide

resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Generally, plaintiffs must produce 'some quantum of evidence...tending to show the existence of a class of persons affected by a company-wide policy or practice.'" *Guan Ming Lin v. Benihana N.Y. Corp.*, 10 Civ. 1335 (RA) (JCF), 2012 U.S. Dist. LEXIS 186526, at *14 (quoting *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 3350, 2009 U.S. Dist. LEXIS 127262) (S.D.N.Y. Nov. 13, 2009). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Spencer v. No Parking Today, Inc.*, 12 Civ. 6323 (ALC) (AJP), 2013 U.S. Dist. LEXIS 36357, *62 (S.D.N.Y. Mar. 15, 2013) (quotations omitted, collecting cases); *Guan Ming Lin*, 2012 U.S Dist. LEXIS 186526, at * 14 ("When courts can discern a company-wide wage policy that injured the proposed class, 'claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.'").

The Second Circuit has noted that "in certain contexts the commonality and typicality requirements of Rule 23(a) tend to merge." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (citing *Wal-Mart*, 564 U.S. 338). The typicality requirement is met when the named plaintiffs' "individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that [they] will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010). "Typicality is satisfied where 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re IndyMac Mortgage-Backed Sec. Litig.*, 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (quoting *Baffa v. Donaldson, Luffkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Plaintiffs allege that commonality is met because Plaintiffs and "each member of the

class shares a common injury caused by Defendants' uniform policy of not paying CNAs for all time worked." (Pls.' Mem. at 19.) Specifically, Plaintiffs contend that the questions of law and fact common to all members of the proposed class include:

> (1) Whether Isabella's practice of only paying the Class Members for their scheduled time—and not the actual time shown by Isabella's own time records—violates the NYLL[;]
>
> (2) Whether Isabella's automatic deduction of one half hour of pay for a meal period without providing its Payroll Supervisor with an override method—although CNAs testified to often working during their meal periods ... —is legal under the NYLL;
>
> (3) Whether Isabella's policy of not paying CNAs for time worked through their meal periods or outside their scheduled shifts unless they have prior authorization from a supervisor is legal under the NYLL[;] [and]
>
> (4) Whether, under the NYLL, Isabella owes Plaintiffs and the Class pay for every minute that they were clocked-in[.]

(*Id.* at 18-19.) These common questions can be categorized as those relating to (1) Isabella's policy of failing to pay time that is not pre-authorized, and (2) Isabella's auto-deduction policy for meal periods, without providing the payroll supervisors with the ability to override when the CNA's meal period was interrupted.

### a. Unauthorized Time

Plaintiffs have demonstrated by a preponderance of the evidence that the class of CNAs was subjected to Isabella's practice of "only paying [them] for their scheduled time" rather than "the actual time shown by Isabella's own time records." (*Id.*) Plaintiffs produced time records from Plaintiff Perez demonstrating that regardless of the hours she punched in or out, she was consistently paid for her scheduled shift of seven and a half hours each day. (Pls.' Reply Mem. at 12; Harrison Decl., Ex. H (Plaintiffs' Deposition Ex. 18, D-0001243).) More importantly, the employee responsible for running payroll, Casiano, testified that Perez was not paid for the extra

time when she clocked out seventeen minutes past the end of her shift because the time had not

been authorized by Director Paul in advance, and furthermore, that Director Paul had never

authorized CNAs to be paid for hours worked before or after their full-time shifts. (Casiano Tr.

51:6-17; 63:9-64:7, 63:19-25.) This demonstration is sufficient evidence that the CNAs were

subjected to a common practice or policy. *Spencer*, 2013 U.S. Dist. LEXIS 36357, *62.

This same evidence satisfies the Court that Perez's claims are typical of those of the class

and that Perez has the "incentive to prove all the elements of the cause of action which would be

presented by the individual members of the class were they initiating individualized actions[.]"

*Houser v. Pritzker*, 28 F. Supp. 3d 222, 245 (S.D.N.Y. 2014) (internal quotations omitted).

Isabella argues that NYLL does not support a "gap time" claim, i.e., straight time pay as

long as workers received at least an average of minimum wage. (Def.'s Mem. at 8-9.) Isabella

contends that NYLL § 191 only dictates *when* workers are entitled to be paid, and not *how much*.

(Def.'s Mem. at 8.) Plaintiffs reject this interpretation of the NYLL and argue that the various

provisions of the labor law, when read together, envision that workers are entitled to be paid their

agreed-upon hourly rate for all hours worked. (Pls.' Reply Mem. at 5-6.) The dispute, however,

is not material to the question of whether the class should be certified, as "[n]othing in either the

language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry

into the merits of a suit in order to determine whether it may be maintained as a class action."

*Baffa*, 222 F.3d at 58 (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d

Cir. 1999).

### b.  Meal Breaks

Plaintiffs have also met their burden in establishing that all class members were subjected

to Isabella's policy of automatically deducting a thirty-minute meal break from CNAs without

providing the payroll supervisors with the ability to override when the CNA's meal period was

interrupted. The time records described above and the testimony of the payroll supervisors demonstrate that all CNAs were impacted by a practice that the Court may find violated NYLL and was contrary even to Isabella's own stated policy of compensating CNAs that "work[] more than 30 minutes of their meal period." (Paul Conditional Decl. ¶¶ 19-20).

Isabella argues that each question presents individualized question of fact and multiple theories of liability because CNAs testified to different levels of harm. Isabella points to the testimony of several CNAs that, it alleges, demonstrates a lack of commonality and typicality among the Plaintiffs and proposed class members. For example, Isabella notes that CNAs indicated whether they were able to take their meal break or perform work outside their scheduled shifts depended on various factors such as "…their workload, the needs of the residents to which they were assigned, [and] … whether the other CNAs working that shift were helpful and efficient." (Def.'s Mem at 20.) Isabella also alleges that differing testimony from some CNAs that they "normally received their full hour meal period" while others "never received any portion of their hour meal period" defeats commonality. (*Id.*) The fact, however, that workers experienced different degrees of harm—even with some experiencing no harm at all—does not defeat classwide resolution of liability questions. *Meyers v. Crouse Health Sys.*, 274 F.R.D. 404, 415 (N.D.N.Y 2011) ("That different employees suffered varying degrees of harm goes to damages, not liability.").

Additionally, typicality is satisfied as both Perez and Cortes testified that they had frequently worked through their meal breaks. Cortes testified that she "very rarely" took her entire meal break, usually only taking fifteen or twenty minutes to quickly eat her lunch. (Cortes Tr. 97:7, 99:7.) She explained that because the CNAs had so much work to do "nobody over there can have the luxury to take an hour lunch." (*Id.* at 99:1-10.) Perez similarly testified that she was only able to take a ten minute break for lunch once or twice a week, and the rest of the

16

time she worked through. (Perez Tr. at 224:11-21.) She said that she would be told by a charge nurse, "in your break time, go to do your rounds." (*Id.* at 121:7-8.)

### 3.   Adequacy

Rule 23(a)(4) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met when (1) the named plaintiff's interests are not "antagonistic to the interest of other members of the class[;]" and (2) "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson*, 222 F.3d 52, 6 (2d Cir. 2000); *accord Loftin v. Bande (In re Flag Telecom Holdings, Ltd. Sec. Litig.)*, 574 F.3d 29, 35 (2d Cir. 2009). The Court's inquiry should focus on uncovering "fundamental" "conflicts of interest between the named parties and the class they seek to represent." *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).

#### a.   Adequacy of Named Plaintiffs

Plaintiffs propose that named Plaintiffs Perez and Cortes be named as class representatives. In support, Plaintiffs submitted the declaration of counsel indicating that the named Plaintiffs "have informed Plaintiffs' counsel that they are willing to be class representatives and are prepared to fully prosecute this action." (Harrison Decl. at ¶ 14.) Counsel also contends that Perez and Cortes "have actively participated in this litigation by providing Plaintiffs' counsel with documents and information necessary to prosecute this action" and "have no known conflicts with members of the putative class." (*Id.* at ¶ 15-16.)

Isabella contends that Perez and Cortes are not adequate representatives of the class because they have submitted no affidavits from themselves that "acknowledg[e] their roles and duties as class representatives," relying instead on the declaration from Plaintiffs' counsel.

(Def.'s Mem. at 24, citing Harrison Decl. ¶ 14.) The Court does not find merit in this objection. Although Perez and Cortes did not submit affidavits in support of the instant motion, which may have been helpful for determining the adequacy of the class representatives, the record contains sufficient information to make an evaluation of their adequacy. Each Plaintiff was deposed for several hours, and their testimony did not suggest any conflict between their interests in pursing the litigation and the interests of the proposed class members. To the contrary, both testified that they understood that they were bringing claims against Isabella because they were not paid for all of their time worked, including during unpaid meal breaks, the same claims as the proposed class members. (Cortes Tr. 12:25-13:2; Perez Tr. 24:6-19.)

Isabella further argues that because both Plaintiffs were allegedly "terminated for cause," their ability to adequately represent the class is "cast [in] serious doubt," (Def.'s Mem. at 25, (citing Casey Decl.), and noting that "class representatives are fiduciaries of the class and must 'adhere to the highest standards of honesty and integrity.'" (*Id.* (quoting *Weisman v. Darnielle*, 78, F.R.D. 669, 671 (S.D.N.Y. 1978)).) The Court rejects this argument, as numerous courts have found that a plaintiff's termination is not relevant in a wage and hour dispute, and Defendants point to no actual evidence in the record that suggests that Plaintiffs have been dishonest in their prosecution of this case. *See, e.g., Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 165 (S.D.N.Y. 2014); *Perez v. Allstate Ins. Co.,* No. 11-CV-1812 (JFB) (AKT), 2014 WL 4635745, at *18-19 (E.D.N.Y. Sept. 16, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 371-72 (S.D.N.Y. 2007). If the Court were to find that plaintiffs who have been terminated are precluded from serving as class representatives, employers would be able to defeat class claims simply by terminating plaintiffs "for cause." Isabella's proposition is a precarious one, and it should not be sanctioned by the Court.

Accordingly, the Court finds Plaintiffs have demonstrated that Perez and Cortes will

fairly and adequately protect the interests of the class.

### b.    Adequacy of Counsel

Plaintiffs have also established the adequacy of Plaintiffs' counsel to represent the class.
Counsel has submitted a declaration setting forth his firm's experience litigation FLSA wage and
hour collective and class actions. (Harrison Decl. ¶¶ 17-22.) As counsel has demonstrated
qualifications and experience, and Isabella has not challenged the adequacy of counsel, the firm
Harrison, Harrison & Associates should be permitted to proceed as class counsel.

### 4.    Ascertainability

"The Second Circuit has recognized a fifth pre-condition to class certification: '[t]he
implied requirement of ascertainability.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407
(S.D.N.Y. 2015) (quoting *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)).
"To be ascertainable, the class must be readily identifiable, such that the court can determine
who is in the class and, thus, bound by the ruling." *Charron v. Pinnacle Grp. N.Y. LLC*, 269
F.R.D. 221, 229 (S.D.N.Y. 2010) (internal quotation marks omitted). "An identifiable class
exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New
York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012). "The standard for ascertainability is not demanding
and is designed only to prevent the certification of a class whose membership is truly
indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

Here, the proposed class is all individuals employed by Isabella as CNAs at its main
campus since October 22, 2007. (Pls.' Mem. at 3.) Plaintiffs argue that the ascertainability
requirement has already been met, Defendants having "already identified the members of the
class to allow notice of the FLSA Collective to be sent to potential members[.]" (Pls.' Reply
Mem. at 9.) Defendants, however, allege that the class, as defined by Plaintiffs, is overbroad, as
it would include individuals with "absolutely no claims," citing *Animal Sci. Prods., Inc. v. Hebei*

*Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012), for the proposition that a class is not ascertainable when "determining class membership would require a mini-hearing on the merits of each case." (Def.'s Mem. at 14-15 (internal quotations omitted).)

The Court does not find that the class, as defined by the Plaintiffs, is overbroad. As discussed above, Isabella's policy and practice of nonpayment for unauthorized time applied to all CNAs and the extent of their damages can be determined by looking at Isabella's own time and wage records. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012) ("The class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements, [and] no subjective criteria is required to determine the class' contours.") (internal citations omitted). Similarly, Isabella's meal break practice also applies to all CNAs, with Isabella's payroll supervisor testifying that she has no ability to override the meal break, even if workers do not take it. (Casiano Tr. 56:9-11.) Class members' damages stemming from this policy can be ascertained, as in many wage and hour cases in which the employer does not keep records of actual time worked, through testimony. *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008) ("In the absence of documentation, the employee may rely on his own recollection to meet his initial burden…in which case the employer must proffer evidence sufficient to rebut that recollection…") (citations omitted). "Plaintiff's proof need not be precise, and if the court finds the testimony credible, it may make an award based on an approximation of the employee's losses." *Id.* (citing *Reich v. South New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997)).

Accordingly, the Court finds that Plaintiffs have satisfied the Second Circuit's implied requirement of ascertainability.

### 5.    Rule 23(b)(3) Requirements

## 1.    Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." *In re Nassau County Strip Search Cases*, 461 F.3d at 227. "The mere existence of individualized defenses does not preclude a finding of predominance … so long as 'a sufficient constellation of common issues binds class members together.'" *Murphy v. Lajaunie*, 13-cv-6503 (RJS), 2015 U.S. Dist. LEXIS 97531, at *17 (S.D.N.Y. July 24, 2015) (quoting *Brown v. Kelly*, 609 F.3d 467, 485 (2d Cir. 2010)).

Plaintiffs contend that predominance is met because Plaintiffs and the putative class members all worked at the same location and were subjected to Isabella's "uniform policy of only paying CNAs for their scheduled hours, not for their actual time worked." (Pls.' Mem at 23.) They argue that "common proof" will establish Isabella's liability, citing to the testimony of Isabella's payroll supervisor and payroll clerk, that they had never received authorization to pay CNAs for time worked before or after the start of a shift, or for hours worked during a lunch break. (*Id.*)

Isabella argues that Plaintiffs have failed to establish that common questions will predominate because they "do not even try to offer a class wide [sic] damages model that would take into account the highly individualized differences with respect to potential damages, if any." (Def.'s Mem. at 24.) Isabella relies on *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013), summarizing the Supreme Court's holding in that case to mean that "damages questions must be considered at the class certification stage when weighing predominance under Rule 23(b)(3)[,]" and *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015), holding the "same." In

*Roach*, however, the Second Circuit clarified that *Comcast* "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis." *Id.* at 407. Rather,

> *Comcast's* holding was narrower. *Comcast* held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury; **but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance**.

*Id.* (emphasis added) (citing *Comcast*, 133 S. Ct. at 1433). Accordingly, the failure to provide a classwide damages model does not defeat predominance. To the contrary, the law of the Second Circuit is that "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)... and cannot support the district court's denial of Plaintiffs' motion for certification." *Roach*, 778 F.3d at 409 (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).)

Accordingly, the Court finds that Plaintiffs have established that questions of fact and law common to the class members will predominate over individualized questions.

### 2.   Superiority

Finally, Rule 23(b)(3) requires plaintiffs to show that classwide adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 sets forth four factors that the Court may consider in its superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Ultimately, the Court must "balance the advantages of a class action against those of alternative available methods of adjudication. *Manley v. Midan Rest. Inc.*, 2016

U.S. Dist. LEXIS 43571, *17 (S.D.N.Y. Mar. 30, 2016) (citing *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114 (S.D.N.Y. 2013)).

Plaintiffs note that certification is appropriate where, as here, "potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." (Pls.' Mem. at 24, citing *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014). Moreover, "courts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (collecting cases).

Accordingly, the Court finds that classwide adjudication is the superior method for adjudicating Plaintiffs' claims.

Because Plaintiffs have established the requirements of Rule 23 by a preponderance of the evidence, the Court recommends that their motion for class certification be granted. The Court should approve Plaintiffs' proposed Notice of the NYLL class action and authorize Plaintiffs to send notice of the class action to the class members. Further, Isabella should be directed to produce to class counsel the names, last known addresses, alternate addresses (if any), all known telephone numbers, all known email address, social security numbers, dates of birth, dates of employment and job titles, of all class members.

## V.    ISABELLA'S MOTION FOR DECERTIFICATION OF THE CONDITIONAL CLASS SHOULD BE DENIED

Isabella asks the Court to decertify the conditional class that was certified by the undersigned on July 1, 2014. (Doc. No. 110.) At the conditional certification stage, plaintiffs are required to make only a "modest factual showing" that "the named plaintiff and other potential

plaintiffs were victims of a common policy or plan violating FLSA." *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (internal quotations omitted). In a post-discovery motion for decertification, however, the Court must apply a "more 'stringent standard' of proof in determining whether plaintiffs are similarly situated for the purposes of the FLSA." *Id.* (quoting *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at * 11 (S.D.N.Y. Oct. 5, 2006), and citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). In determining whether to decertify a FLSA collective action, courts in this Circuit look to "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]." *Jacob v. Duane Reade, Inc.*, 11-CV-0160 (JPO), 2016 U.S. Dist. LEXIS 75384, *30 (S.D.N.Y. June 9, 2016) (quoting *Zivaldi*, 784 F. Supp. 2d at 460.)

For many of the same reasons that the Court recommends certification of the Rule 23 class, the Court finds that the opt-in Plaintiffs are similarly situated. All members of the FLSA collective action worked at Isabella's main campus and performed similar job duties with respect to resident care. (Pls.' Mem. in Opp. at 8 (citing testimony).) All were subjected to Isabella's policy of not compensating CNAs for hours worked outside of their scheduled shifts. Plaintiffs are also susceptible to the same common defenses. Isabella has argued within its memorandums to the instant motion that (1) its policy of paying only for pre-authorized shifts is lawful; (2) its practice of not overriding automatic meal break deductions is lawful because workers were entitled to both a thirty-minute unpaid break and two paid fifteen-minute breaks; and (3) Isabella had no knowledge of the CNAs' unpaid work. (Def.'s Decert. Mem. at 16, 26-27.)) Finally, fairness and procedural considerations weigh in favor of certifying the collective action. As the Court recommends certifying a Rule 23 class, "allowing the FLSA collective action to proceed

24

as well is fair and procedurally efficient." *Jacob*, 2016 U.S. Dist. LEXIS 75384 at \*32.

Accordingly, the Court recommends that Isabella's motion to decertify the conditional FLSA class be **DENIED**.

## VI.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiffs' motion to certify as a class all individuals who were employed as CNAs at Isabella's main campus from October 22, 2007, until the present, be **GRANTED**. The Court should approve Plaintiffs' proposed Notice of the NYLL class action and authorize Plaintiffs to send notice of the class action to the class members. Further, Isabella should be directed to produce to class counsel the names, last known addresses, alternate addresses (if any), all known telephone numbers, all known email address, social security numbers, dates of birth, dates of employment and job titles, of all class members. The Court further recommends that Isabella's motion to decertify the conditional FLSA collective action be **DENIED**.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Foley Square, Room 2203, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and*

*Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed.R.Civ.P. 72, 6(a), 6(d).

**DATED**: September 1, 2016
New York, New York

The Honorable Ronald L. Ellis
United States Magistrate Judge