UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 09/30/2016

---

YUDELKA E. PEREZ, *et al.*,

     Plaintiffs,

    v.

ISABELLA GERIATRIC CENTER, INC.,

     Defendant.

No. 13-CV-7453 (RA)

OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION
IN PART

---

RONNIE ABRAMS, United States District Judge:

    Plaintiffs Yudelka E. Perez and Maritza A. Cortes bring this putative collective and class action against Defendant Isabella Geriatric Center, Inc. ("Isabella"), the nursing home where they worked as Certified Nursing Assistants ("CNAs"). Plaintiffs seek unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). On July 1, 2014, the Honorable Ronald L. Ellis, United States Magistrate Judge, conditionally certified Plaintiffs' FLSA claim as a collective action. On October 15, 2015, Plaintiffs moved for certification of their NYLL claim as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).[1] On the same day, Isabella moved to decertify the FLSA collective action. Both motions are opposed.

    Before the Court is a Report and Recommendation (the "Report") from Judge Ellis, recommending that the Court grant Plaintiffs' motion to certify the NYLL class under Rule 23(b)(3) and deny Isabella's motion to decertify the FLSA collective action. Dkt. 163. Isabella filed timely objections on September 15, 2016, Dkt. 168, and Plaintiffs responded on September 29, 2016, Dkt. 170. For the reasons set forth below, the Court adopts the well-reasoned Report

---

[1] At the time of Plaintiffs' motion, there were 762 potential class members. *See* Harrison Decl. ¶ 13, Oct. 15, 2015.

almost in its entirety.  The Court assumes familiarity with the Report and its recitation of the relevant factual background and procedural history, which are repeated below only as needed.

## LEGAL STANDARD

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  The court may adopt the portions of the report to which no specific, written objection is made "as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Minto v. Decker*, 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012)).  As to those portions to which specific objections are made, a court must undertake a *de novo* review.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  "When a party makes only conclusory or general objections," however, "or simply reiterates the original arguments made below, a court will review the report strictly for clear error."  *Minto*, 108 F. Supp. 3d at 192.[2]

## DISCUSSION

### I.  Certification of the NYLL Class

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  A party seeking certification under Rule 23(b)(3) must establish "numerosity, commonality, typicality, adequacy of representation, predominance of common questions of law or fact, and the superiority of a class action to other procedures."  *Mazzei*

---

[2] Isabella cannot obtain *de novo* review of the entire Report by simply asserting that the "[r]eport [f]ails to [e]ngage in a [r]igorous [a]nalysis and [d]isregards . . . [s]ubstantial [e]vidence."  Def.'s Objs. at 3.  Consistent with the law, the Court has reviewed *de novo* only the portions of the Report to which Isabella has specifically objected.

*v. Money Store*, 829 F.3d 260, 270 (2d Cir. 2016). Judge Ellis concluded that Plaintiffs satisfied each of these requirements. *See* Report at 11–23. Isabella objects to the Report's findings with respect to commonality, typicality, and predominance. *See* Def.'s Objs. at 8–21. Isabella also objects to the Report's conclusion that Plaintiffs' "scheduled hours" claim is properly before the Court, and to the Report's recommendation that the Court order Isabella to disclose class members' social security numbers and dates of birth. *Id.* at 23–25.

## A. Commonality and Typicality

The Court first addresses Isabella's commonality and typicality objections. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011)). Commonality "is satisfied if there is a common issue that 'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* at 84 (alteration in original) (quoting *Dukes*, 564 U.S. at 350). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Mazzei*, 829 F.3d at 272 (alteration in original) (quoting *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)). "The commonality and typicality requirements often 'tend to merge into one another, so that similar considerations animate analysis' of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

The common issue in this case is the legality of Isabella's compensation-related policies and practices. Plaintiffs have identified three policies and practices that they allege Isabella knowingly employed with the effect of causing Plaintiffs to be undercompensated in violation of

3

the NYLL: (1) the practice of paying CNAs for their scheduled time, rather than the time worked; (2) the practice of automatically deducting one half hour of pay for each meal period without providing payroll with an override method when the CNAs work through the meal period; and (3) the policy of not paying CNAs for time worked through their meal periods or outside their scheduled shifts without pre-authorization. *See* Pls.' Mem. Supp. Class Certif. at 18; Report at 14. The Court finds that Plaintiffs have demonstrated the existence of each of these policies or practices by a preponderance of the evidence. First, selected timesheets of Plaintiff Perez show that Isabella paid Perez only for her scheduled shifts regardless of her on-the-clock hours, *see* Report at 14, and Isabella's payroll staff testified that any payment for time worked outside of scheduled shifts (even for on-the-clock time) had to be authorized by management, and that such authorization was rarely given. *See* Harrison Decl. Ex. C ("Bourdony Dep. Tr.") 54:2–4, 59:4–22, Oct. 15, 2015; *id.* Ex. E ("Casiano Dep. Tr.") 51:11–13, 52:9–21. A payroll staff member also agreed during her deposition that "CNAs are only paid according to their scheduled hours." Casiano Dep. Tr. 52:9–11.[3] Second, it is clear that Isabella automatically deducted a thirty-minute period of compensable time from each shift of six hours or more, *see* Bourdony Dep. Tr. 62:19– 63:2; Ho Aff. Ex. T ¶¶ 19–20, Oct. 15, 2015, and that the deduction could not be overridden by payroll, *see* Bourdony Dep. Tr. 52:9–12; Casiano Dep. Tr. 56:9–11. Third, the record establishes that Isabella's overtime policy requires pre-authorization. *See, e.g.*, Ho Aff. ¶ 39.

Isabella argues that none of the policies or practices are *per se* illegal, but Plaintiffs' theory of liability is based on more than facial validity. Plaintiffs' claims ultimately rest on the contention that these policies and practices—together with the "standard policy" of assigning CNAs more

---

[3] Isabella contends that CNAs were paid for time outside of their scheduled shifts on at least some occasions, which, it argues, contradicts the assertion that Isabella had a practice of paying only for scheduled time. *See* Def.'s Objs. at 12–13. Plaintiffs have nonetheless demonstrated that it was Isabella's general *policy* to pay only for scheduled time, especially in light of the clear testimony from Isabella's payroll staff on this issue.

work than they can complete within their regularly scheduled shifts[4]—had the effect of causing the class to perform uncompensated work. The common questions that are likely to drive the resolution of the litigation are therefore whether the confluence of these policies and practices can establish, on a classwide basis, that: (1) Plaintiffs performed uncompensated work and (2) Isabella had knowledge or constructive knowledge of that work. *See, e.g., Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 363 (S.D.N.Y. 2014) ("To establish liability under the . . . NYLL on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." (omission in original) (internal quotation marks omitted) (quoting *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881 (KAM), 2014 WL 1224247, at \*4 (E.D.N.Y. Mar. 24, 2014))); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1166 (9th Cir. 2014) (finding that similar questions satisfied commonality in a Rule 23 wage action brought under California state law), *cert. denied*, 135 S. Ct. 2835 (2015). The Court need not reach the merits of these common questions at the certification stage. It is enough that the policies or practices that serve as the basis for Plaintiffs' claims have been shown to apply uniformly to the putative class. *See, e.g., Lassen v. Hoyt Livery Inc.*, No. 13-CV-1529 (JAM), 2014 WL 4638860, at \*9 (D. Conn. Sept. 17, 2014) (finding commonality where it was "not disputed . . . that all members of the putative class were subject to a uniform compensation policy . . . the legality or illegality of [which] . . . provide[d] the unifying thread to satisfy the commonality requirement of Rule 23(a)(2).").

Isabella argues that its compensation policies were facially lawful, that it did not systematically require CNAs to work additional hours, and that some CNAs reported having not worked off-the-clock or during meal breaks. *See* Def.'s Objs. at 11–13. But these arguments,

___

[4] The record contains ample evidence that this "standard policy" existed. *See, e.g.*, Harrison Decl. Ex. I 32:8–12; *id.* Ex. K. 131:3–15; *id.* Ex. R 204:16–25.

however persuasive they may prove to be at summary judgment or trial, are insufficient to bar class certification. *See Jimenez*, 765 F.3d at 1166 n.5 (argument that official compensation policy is lawful "is appropriately made at trial or at the summary judgment stage, as it goes to the merits of the plaintiffs' claim."). "To the extent Defendant[ ] argue[s] that [it] will prove to the jury's satisfaction that no illegal policy existed for any Plaintiff, [its] ability to proffer such evidence only reinforces the Report's conclusion that the class's claims may be resolved by generalized proof." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA), 2016 WL 5338551, at *4 (S.D.N.Y. Sept. 23, 2016).

Isabella also contends that "the Report stands in stark contrast to many post-*Dukes* decisions denying Rule 23 class certification of similar claims." Def.'s Objs. at 9. But "[c]ourts have not found that '*Dukes* bars certification in wage and hour cases.'" *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 288 (S.D.N.Y. 2015) (quoting *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012)), *reconsideration denied*, No. 10-CV-5950 (KPF), 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015). Moreover, there is precedent both inside and outside of this circuit finding commonality and typicality in similar cases. *See, e.g., Ramirez*, 39 F. Supp. 3d at 363–65 (on-the-clock claim); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127–28 (S.D.N.Y. 2011) (off-the-clock and meal break claims). The Court thus adopts Judge Ellis's determination as to commonality and typicality. *See* Report at 12–17.

## B. Predominance

Isabella next objects to the Report's conclusion on predominance. "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L.*

*Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)). The predominance requirement "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration in original) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)).

Isabella contends that "a trial in this matter will necessarily require extensive individual testimony from the putative class members on both liability and damages." Def.'s Objs. at 18. According to Isabella, the putative class members had "very different experiences with respect to: (1) whether they ever performed additional work during meal periods, off-the-clock or outside their scheduled shifts; (2) whether their supervisors required them to work additional hours or were aware that they did work additional hours; and (3) whether the CNAs were paid for any additional hours worked." *Id.* Isabella also argues that the record contains "dramatically different testimony with respect to [Plaintiffs'] damages." *Id.*

Even accounting for these differences, the Court agrees with the Report that common questions will likely predominate over individual ones. As discussed above, this case turns on common questions relating to whether certain of Isabella's compensation-related policies and practices, as applied, violate the NYLL on a classwide basis. If the putative class fails in its proof, it will lose the case. If the class succeeds and common liability is established, then the determination of damages will vary according to the nature of the uncompensated time. With respect to any unpaid on-the-clock time, "the primary hurdle to recovery is likely to consist

predominantly of arithmetical calculations based on payroll records and other documentary evidence." *Ramirez*, 39 F. Supp. 3d at 369. The Court does not view this as a significant hurdle.

The calculation of damages for unpaid off-the-clock or meal break time may prove more complicated. But as Judge Ellis noted, "the failure to provide a classwide damages model does not defeat predominance." Report at 22 (citing *Roach*, 778 F.3d at 409). Damages arising from unrecorded time do not necessarily require individualized inquiries, because Plaintiffs are not required to prove such damages with exactitude. They need only "prove[ ] that [they have] in fact performed work for which [they were] improperly compensated and . . . the amount and extent of that work as a matter of just and reasonable inference. . . . [T]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee[s'] evidence." *Tyson Foods*, 136 S. Ct. at 1047 (internal quotation marks and citation omitted) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)); *see also Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 471 n.31 (S.D.N.Y. 2015) (noting that this burden-shifting framework applies to claims brought under the NYLL). As *Tyson Foods* makes clear, plaintiffs are permitted to "introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records." 136 S. Ct. at 1047.[5]

Isabella suggests that any representative evidence will necessarily be unworkable in this case, *see* Def.'s Objs. at 19–20, but the Court disagrees. As the Supreme Court recognized in *Tyson Foods*, "[i]n many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability." 136 S. Ct. at 1046 (quoting Manual of Complex Litigation § 11.493 (4th ed. 2004)). The Court has the "ability to manage the litigation

---

[5] To the extent Isabella argues that its records of on-the-clock time do not accurately measure time worked, *see* Def.'s Objs. at 20–21, the burden-shifting framework would apply to that category of unpaid time as well.

8

as it develops," *Marisol A.*, 126 F.3d at 377, and if Plaintiffs ultimately fail to proffer a workable

trial plan, then the Court can decertify the class, *see, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 705

F.3d 770, 776 (7th Cir. 2013) (affirming district court's decertification of a Rule 23 class in a wage

action where class counsel was "incapable of proposing a feasible litigation plan").

### C.   The Scheduled Hours Claim

Isabella next objects to Judge Ellis's conclusion that Plaintiffs' scheduled hours claim is

properly before the Court, arguing that it cannot serve as a basis for class certification because it

was not alleged in the Complaint. *See* Def.'s Objs. at 23–25. The Court disagrees. The Complaint

alleges that CNAs "regularly performed unpaid work outside their regularly scheduled shifts and

during their unpaid meal breaks." Compl. ¶ 22 (emphasis omitted). This alone provides adequate

notice of a scheduled hours theory.[6] Furthermore, the Court agrees with Judge Ellis that Isabella's

prior briefing and the general course of discovery make it clear that Isabella was aware of this

issue. *See* Report at 8.

### D.   Personal Information of the Class Members

Isabella also objects to the Report's recommendation that the Court direct Isabella to

produce the social security numbers and dates of birth of all class members. *See* Def.'s Objs. at

25. The Court agrees with this objection, and thus declines to adopt the Report's recommendation

on this narrow point. *See Velasquez v. Digital Page, Inc.*, No. 11-CV-3892 (LDW) (AKT), 2014

WL 2048425, at *15 (E.D.N.Y. May 19, 2014) ("With regard to dates of birth and social security

---

[6] Isabella's reliance on *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22 (W.D.N.Y. 2014), is misplaced. The court in *Hinterberger* held that "a rounding claim cannot reasonably be read into a claim alleging unpaid preliminary and postliminary work"—terms that have "particular meaning in the wage and hour context." 299 F.R.D. at 52–53 (citing 29 C.F.R. §§ 790.7, 785.5). The Complaint in this case clearly alleges more than just "unpaid preliminary and postliminary work." *See* Report at 8 (citing Compl. ¶¶ 22, 24, 39).

numbers . . . courts typically decline to allow discovery in the first instance."). Plaintiffs may renew their request at a later date, if necessary.

## II.  Decertification of the FLSA Collective Action

Isabella's final objection concerns its motion to decertify the FLSA collective action. Section 216(b) of the FLSA allows employees to bring actions under the FLSA on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Courts in the Second Circuit handle certification through a two-step process. The first step requires plaintiffs to make only "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, *J.*)). This case is at the second step, where "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* Courts apply a more "stringent standard" of proof at the second stage. *See Ruiz*, 93 F. Supp. 3d at 297–98 (internal quotation marks omitted) (quoting *Morano v. Intercont'l Capital Grp., Inc.*, No. 10-CV-2192 (KBF), 2012 WL 2952893, at *5 (S.D.N.Y. July 17, 2012)). To determine whether plaintiffs are "similarly situated" under Section 216(b), district courts typically consider "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014).

Based on a review of these factors, Judge Ellis recommended against decertifying the collective class. *See* Report 24–25. Isabella objects to this recommendation, relying on arguments similar to those that it raised in the context of Plaintiffs' Rule 23 motion. *See* Def.'s Objs. at 22–

23.    Rehashing its commonality and typicality arguments, Isabella contends that the FLSA Plaintiffs were not subject to an unlawful common policy because: (1) Isabella's official policies are lawful; (2) "[m]ost deposed CNAs admitted that they were never instructed to work extra hours and that they failed to report any such hours"; and (3) Plaintiffs failed to establish that CNAs worked additional hours. *Id.* at 22.[7] But, as stated, these arguments go to the merits of Plaintiffs' case; they do not undermine the Report's conclusion that the FLSA Plaintiffs were subject to the specific policies that Plaintiffs are challenging. *See* Report at 24. Indeed, Isabella's arguments demonstrate that Plaintiffs' FLSA claims are "susceptible to the same common defenses." *Id.*

Isabella also argues that the FLSA Plaintiffs are not "similarly situated" due to a need for individualized proof with respect to (1) each Plaintiff's hours worked, (2) whether Isabella required or had knowledge of any additional work, and (3) whether such work was compensated. *See* Def.'s Objs. at 23. But this recycled predominance argument is no more persuasive in the context of Section 216(b) than it was in the context of Rule 23. *See Ruiz*, 93 F. Supp. 3d at 298–99 ("[I]t is not mere coincidence that courts facing parallel motions to decertify an FLSA collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis."). The Court therefore accepts the Report's recommendation, and Isabella's decertification motion is denied.

---

[7] In this context, Isabella noted again that it paid CNAs for additional hours on at least some occasions. *See* Def.'s Objs. at 22. As discussed above, this fact alone does not defeat the significant evidence that Isabella's general policy was to pay CNAs only for scheduled time.

**CONCLUSION**

Having reviewed *de novo* the portions of the Report to which Isabella objected, and finding no clear error in the portions to which Isabella did not object, the Court adopts the Report in part and rejects it in part. It is hereby ORDERED that: (1) a class is certified consisting of "all individuals employed by Isabella as a CNA at its main campus located on Audubon Avenue in northern Manhattan at any time during the period starting on October 22, 2007 (six years prior to the filing of the Complaint), until the present"; (2) David Harrison and Julie Salwen of Harrison, Harrison & Associates, Ltd. are appointed as class counsel; (3) Plaintiffs Perez and Cortes are appointed as class representatives; (4) the proposed Notice of the NYLL class action is approved;[8] (5) Plaintiffs are authorized to send the Notice to the class; and (6) Isabella shall produce to class counsel the names, last known addresses, alternate addresses (if any), all known telephone numbers, all known email addresses, dates of employment, and job titles of all class members. Isabella's motion to decertify the FLSA collective action is denied. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 108 and 110.

SO ORDERED.

Dated:    September 30, 2016
          New York, New York

                                            Ronnie Abrams
                                            United States District Judge

---

[8] Plaintiffs shall make two amendments to the Notice before circulating it. First, the last sentence of the fourth bullet should be corrected to read: "The lawsuit is known as *Perez et. al. v. Isabella Geriatric Center, Inc.*, 13-CV-7453 (RA) (RLE)." Second, the first sentence of the second paragraph on page two should be revised to read: "By remaining a member of the Class, you *may* give up the right to separately bring a lawsuit against Isabella for unpaid wages under the Fair Labor Standards Act and the New York Labor Law."

12