# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YUDELKA E. PEREZ, MARITZA A. CORTES      :
on behalf of themselves and all other similarly   :
situated persons,                                             :
                                                                       :
                                    Plaintiffs,                :
                                                                       :     CIV. NO. 13 CV-07453 (RA)(KNF)
             v.                                                    :
                                                                       :
ISABELLA GERIATRIC CENTER, INC.,       :
                                                                       :
                                    Defendant.              :
-----------------------------------------------------------------X

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release is entered into by and between Plaintiffs and the class of individuals that they represent (as hereinafter defined) and Defendant (as hereinafter defined).

**RECITALS**

WHEREAS, Plaintiffs Yudelka Perez and Maritza A. Cortes filed their Class Action Complaint against Defendant Isabella Geriatric Center, Inc. ("Isabella" or "Defendant") on October 22, 2013, asserting claims on behalf of certain Certified Nursing Assistants / Certified Nurse Aides ("CNA" or "CNAs") employed by Defendant;

WHEREAS, Plaintiffs have asserted class claims under the New York Labor Law ("NYLL") and collective claims under the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, wages, liquidated damages, interest, and attorneys' fees and costs;

WHEREAS, on July 1, 2014, the Honorable Ronald L. Ellis, United States Magistrate Judge, conditionally certified Plaintiffs' FLSA claims as a collective action;

WHEREAS, on October 15, 2015, Plaintiffs moved for certification of their NYLL claims as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and on the same day Isabella moved to decertify the FLSA collective action;

WHEREAS, on September 1, 2016, the Honorable Ronald L. Ellis, United States Magistrate Judge, issued a Report and Recommendation recommending that the court grant Plaintiffs' motion to certify the NYLL class under Rule 23(b)(3) and deny Isabella's motion to decertify the FLSA collective action;

WHEREAS, following timely objections filed by Isabella, by Order dated September 30, 2016, United States District Court Judge Ronnie Abrams adopted the Report and Recommendation almost in its entirety and certified the NYLL class;

WHEREAS, pursuant to an Order from the Court dated January 23, 2017, Plaintiffs filed an Amended Complaint on February 7, 2017;

WHEREAS, Defendant has denied and continues to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Class Counsel has conducted significant discovery, including but not limited to interviewing Plaintiffs and Class Members, reviewing and analyzing over 800 documents produced by Plaintiffs and FLSA Collective Action members and tens of thousands of documents produced by Defendant, and taking / defending twenty-one (21) depositions;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined);

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1.    DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

    **1.1**    **Agreement.**  "Agreement" shall mean this Joint Stipulation of Settlement and Release.

    **1.2**    **Claim Form.**  "Claim Form" shall mean the form provided to Class Members to submit in order to obtain their Final Individual Settlement Amounts pursuant to this Agreement.  The Claim Form shall be in the form attached as Exhibit B to this Agreement, or in such other form as is approved by the Court.

1.3 **Claim Form Deadline.** "Claim Form Deadline" shall mean the date that is sixty (60) calendar days after the Mailing Date. If the Claims Administrator re-mails the Claim Form to any Class Member pursuant to Section 2.4 of this Agreement because the first mailing was returned as undeliverable or because a Class Member has requested a reissued Claim Form, the Claim Form Deadline for such individual shall be the earlier of (a) sixty (60) calendar days after the re-mailing, or (b) seventy-nine (79) calendar days after the Mailing Date. Notwithstanding the above in no case shall the Claim Form Deadline for a Class Member be less than fourteen (14) calendar days after the re-mailing to such Class Member. If the Claim Form Deadline falls on a Sunday or holiday, the Claim Form Deadline will be the next business day that is not a Sunday or holiday.

1.4 **Claimant.** "Claimant" shall mean any Class Member who: (a) previously filed a consent to sue form in this Litigation and was not subsequently dismissed from the Litigation, or (b) timely submits a valid Claim Form on or before the Claim Form Deadline.

1.5 **Claims Administrator.** "Claims Administrator" shall mean the entity selected by the Parties to provide notice to the Class and administer payment of the settlement to Claimants and Class Counsel. The Parties shall use Arden Claims Service or another claims administrator mutually agreed to by the Parties in writing.

1.6 **Class; Class Members.** "Class" shall mean all persons employed by Defendant as CNAs (Certified Nursing Assistant and/or Certified Nurse Aide) at any time during the Covered Period, except that any individual who timely submitted or submits a valid Opt-Out Statement pursuant to Section 2.5 below shall not be included in the Class. A member of the Class is a "Class Member."

1.7 **Class Counsel.** "Class Counsel" shall mean David Harrison and Julie Salwen of Harrison, Harrison & Associates, LTD.

1.8 **Court.** "Court" shall mean the United States District Court for the Southern District of New York.

1.9 **Covered Period.** "Covered Period" shall mean the period from October 22, 2007 through the date of the Order Granting Preliminary Approval.

1.11 **Defendant.** "Defendant" shall mean Isabella Geriatric Center, Inc.

1.10 **Defendant's Counsel.** "Defendant's Counsel" shall mean Ernest Stolzer and Katherine McClung of Bond Schoeneck & King, PLLC.

1.11 **Escrow Account.** "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Claims Administrator for the purposes of the receipt and payment of the settlement funds provided for herein.

1.12  **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.13  **Final Individual Settlement Amount.** "Final Individual Settlement Amount" shall mean the final amount payable to any Claimant, not including any Service Awards, under this Agreement. A Claimant's Final Individual Settlement Amount shall be his or her Individual Settlement Amount subject to any adjustments under Sections 3.5(B) and (C).

1.14  **Individual Settlement Amount.** "Individual Settlement Amount" shall mean each Claimant's share of the Net Settlement Fund, as calculated pursuant to Section 3.5(A) of this Agreement.

1.15  **Lead Plaintiffs.** "Lead Plaintiffs" shall mean Yudelka Perez and Maritza Cortes.

1.16  **Litigation.** "Litigation" shall mean *Perez et al v. Isabella Geriatric Center, Inc*, Case No. 13 CV 07453, pending in the United States District Court for the Southern District of New York.

1.17  **Mailing Date.** "Mailing Date" shall mean the day on which the Claims Administrator first attempts to mail the Claims Form to the Class Members pursuant to Section 2.4 of this Agreement

1.18  **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Fund plus any interest accrued from the Escrow Account as described in Section 3.1 after deductions for court-approved attorneys' fees and costs as described in Section 3.2, court-approved service payments to the Service Award Plaintiffs as described in Section 3.3, and any fees or taxes incurred in connection with the Escrow Account.

1.19  **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the order granting final approval to the terms and conditions of this Agreement, entered by the Court after the Fairness Hearing.

1.20  **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.21  **Service Award Plaintiffs.** "Service Award Plaintiffs" shall mean each of the following: Yudelka Perez, Maritza Cortes, Ana Paulino, Maria Almonte, Leticia Foster, Norma Francis, Ruby Hope-Tidoe, George Houston, Yvette Morris, Jamie Nichols, Izora Pettway, Elizabeth Radovich, Jasmine Rodrigues, Mercedes Rosario, Angela Santana, Towanda Berkley, Adenike Canty, Maria Castro, Jaime Diaz, Selina Drayton, Lenny Encarnacion, Evelyn Hyacinthe, Naomi Jenkins, Lillian Lomax, Carmen Mayol, Shantae McClinton, Myriam Ramirez, Reyna Rosario, Patricia Saulas, Jazmine Soberanis, Monte Stephens, Lisa Velasquez, Juan Ventura, Eula Wells, and Iona Wilson.

1.22 **Settlement Fund.** The "Settlement Fund" shall mean $4,120,000.00.

1.23 **Settlement Payment.** "Settlement Payment" shall mean the sum of the aggregate of the Final Individual Settlement Amounts, court-approved attorneys' fees and costs as described in Section 3.2, court-approved service payments to the Service Award Plaintiffs as described in Section 3.3, and any fees and taxes incurred for the Escrow Account.

1.24 **The First Funding Date.** The "First Funding Date" shall be within thirty (30) calendar days of the Order Granting Preliminary Approval.

1.25 **The Initial Payment.** The "Initial Payment" shall mean the initial payment in the amount of $1,100,000.00 to be paid by the Defendant into the Escrow Account by the First Funding Date.

1.26 **The Second Payment.** The "Second Payment" shall mean the second payment in the amount of one half of the difference between the Settlement Payment and the Initial Payment.

1.27 **The Third Payment.** The "Third Payment" shall mean the third payment in the unpaid amount of the Settlement Payment after the Initial Payment and Second Payment have been made (*i.e.*, the Settlement Payment minus the Initial Payment minus the Second Payment).

1.28 **Threshold Amount.** "Threshold Amount" shall mean the amount of Unclaimed Funds which combined with (i) the aggregate of the Individual Settlement Amounts for Claimants, (ii) the court-approved attorneys' fees and costs as described in Section 3.2, (iii) the court-approved service payments to the Service Award Plaintiffs as described in Section 3.3, and (iv) any fees and taxes incurred for the Escrow Account, results in a total equal to Three Million Fifty Thousand Six Hundred Sixty-Six Dollars and No Cents ($3,050,666.00).

1.29 **Unclaimed Funds.** "Unclaimed Funds" shall mean the aggregate amount of Individual Settlement Awards not claimed by Class Members in a timely manner pursuant to paragraph 2.4 of this Agreement.

2. **APPROVAL AND CLASS NOTICE**

    2.1 **Retention of Claims Administrator.** Defendant shall be responsible for the Claims Administrator's fees/costs. The Claims Administrator shall be responsible for the claims administration process and distributions to Claimants and Class Counsel as provided herein, as well as for making any mailings required under this Agreement. The Parties agree to cooperate with the Claims Administrator and take all reasonable steps to assist it in administering the Settlement.

    2.2 **Intentionally Left Blank.**

2.3    **Final Order and Judgment from the Court.**  Lead Plaintiffs shall submit to the Court a Motion for a Final Order and Judgment ("Final Approval Motion") no later than seven (7) calendar days before the Fairness Hearing.  The Fairness Hearing shall be held at the Court's convenience, but the Parties shall request that the hearing take place at least one hundred fifty-five (155) calendar days after the Order Granting Preliminary Approval.  The Proposed Final Order and Judgment shall be in a form agreed upon by the Parties.  The Final Approval Motion will be provided to Defendant for review and comment at least five (5) calendar days prior to filing with the Court, and Lead Plaintiffs will accept Defendant's reasonable comments.  Defendant may oppose the Final Approval Motion with respect to any comments that are not accepted by Lead Plaintiffs.

2.4    **Class Notice and Class Member Claim Forms.**

(A)    Within seven (7) calendar days of the date of the Order Granting Preliminary Approval, Defendant will provide the Claims Administrator with a list (the "Class List"), in electronic form, of each Class Member's name, last known address, and last known phone number, along with each Class Member's total hours paid for working as a CNA for Defendant during the Covered Period.  Defendant will simultaneously provide Class Counsel with the Class List.

(B)    Defendant shall instruct its managers and supervisors not to discuss the settlement with Class Members and to refer <u>all</u> questions from Class Members to Betty Lehman, Marilyn Pacheco, or Ruby Kaur in Isabella's Marketing Department (212-342-9539), who shall refer questions to Class Counsel.

(C)    Within ten (10) calendar days after receiving the Class List, the Claims Administrator shall distribute to each Class Member the Notice and Claim Form, along with an addressed return envelope, postage prepaid, via United States Postal Service First Class mail.  Prior to mailing the Notice and Claim Form, the Claims Administrator shall update the addresses for those on the Class List using the National Change of Address database.  The Notice shall inform each Class Member of her or his rights under this Agreement, including the method of calculating the Individual Settlement Payments and the estimated monetary value of each hour paid for working as a CNA during the Covered Period, and the Claim Form shall inform each Class Member of his or her total hours paid for working as a CNA for Defendant during the Covered Period, unless otherwise ordered by the Court in the Order Granting Preliminary Approval.  Defendant's Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process.

(D)    The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office.  If the U.S. Postal Service provides a forwarding addresses the Claims Administrator shall re-mail the Notice and Claims form to such address.  If no such forwarding address is provided, the Claims Administrator shall notify

      Defendant's Counsel, and the Defendant shall provide that Class Member's social security number, within two (2) business days of such notice, to the Claims Administrator, who shall perform a skip trace using the Class Member's social security number to attempt to obtain the most recent addresses for the Class Member.  Notwithstanding the foregoing, the Claims Administrator shall not mail out any notices after the 65th calendar day following the Mailing Date.

(E)    The Claims Administrator shall, within three (3) calendar days after the first mailing of Notice, notify Class Counsel and Defendant's Counsel of the Mailing Date and the default Claim Form Deadline.

(F)    The Claims Administrator shall notify Class Members who submit deficient Claim Forms ("Deficient Claimants") of the deficiency within six (6) calendar days of receipt.  Deficient Claimants will have until the later of the Claim Form Deadline or ten (10) calendar days after the Claims Administrator sends the notice of the deficiency to cure said deficiency.  If a Deficient Claimant cures the deficiency within this time period, his or her Claim Form shall be considered received on or before the Claim Form Deadline.  If the deficiency is not cured within this time period, the Claims Administrator shall inform the Deficient Claimant of the deficiency within six (6) calendar days and the Deficient Claimant will have an additional seven (7) calendar days after the administrator sends the second notice to cure said deficiency.  If the Deficient Claimant's Claim Form is cured within the above time limits his or her Claim Form will be accepted and he or she shall be deemed a Claimant for all purposes.  If the deficiency is not cured within seven (7) days of the second notice by the Claims Administrator, the Deficient Claimant's claim will be waived.

(G)    Each Class Member must submit his/her completed Claim Form to the Claims Administrator no later than the Claim Form Deadline in order to receive his or her Final Individual Settlement Amount.  For Claim Forms submitted by mail, the postmark date of the Claim Form mailed by the Claims Administrator to the Class Member and the postmark date of the Claim Form mailed by the Class Member to the Claims Administrator shall be the means for determining whether a Class Member timely submitted his/her Claim Form.  Claim Forms submitted by facsimile or electronic submission must have a time stamp, or be received, on or before the Claim Form Deadline.  In the event that there is no postmark date on the Claim Form mailed by the Class Member to the Claims Administrator, it shall be presumed that the Claim Form was mailed three (3) calendar days prior to the Claims Administrator's receipt of the Claim Form.

(H)    Twenty-eight (28) calendar days after the Mailing Date, the Claims Administrator shall mail to all Class Members who did not yet return Claim Forms a postcard reminder notice attached hereto as Exhibit C.

**2.5** **Class Member Opt-Out.**

(A) Any potential Class Member may request exclusion from the Class by "opting out" on or before the Claim Form Deadline. Any Class Member who chooses to opt out of the class must mail a written, signed statement to the Claims Administrator stating that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address, and telephone number of the Class Member to be valid. It must also contain the words "I elect to exclude myself from the settlement in *Perez et al v. Isabella Geriatric Center*" in order to be valid. To be effective, such Opt-Out Statements must be submitted by the Claim Form Deadline.

**2.6** **Objections to Settlement.**

(A) Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be effective, such objections must be submitted to the Claims Administrator by the Claim Form Deadline.

(B) An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so by the Claim Form Deadline. An objector may withdraw his/her objections at any time. No objector may appear at the Fairness Hearing unless he/she has filed a timely objection that complies with the procedures provided in Section 2.6(A). Any Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement.

(C) Any Party may file written responses to any filed objections with the Court no later than seven (7) calendar days before the Fairness Hearing.

**2.7** **Statement From Claims Administrator**. No later than one hundred twenty (120) calendar days after the Order Granting Preliminary Approval, the Claims Administrator will provide Class Counsel and Defendant's Counsel with all objections and opt-out statements and a statement/spreadsheet that contains the following information:

    (i) A summary of the total settlement payments for attorneys' fees, costs, service awards, and Final Individual Settlement Amounts;

    (ii) The total number of Claim Forms received by the Claims Administrator; and

    (iii) The total number of objections and Opt-Out Statements received by the Claims Administrator.

**2.8** **Effect of Failure to Grant Final Approval.** In the event the Court fails to issue an Order Granting Preliminary Approval or an Order Granting Final Approval,

the Litigation will proceed as if no settlement had been attempted, and the Claims Administrator shall transmit any money in the Escrow Account to Defendant within fourteen (14) calendar days of the notice from Defendant's Counsel that the Court has failed to issue an Order Granting Preliminary Approval or an Order Granting Final Approval.

**3.    SETTLEMENT TERMS**

   **3.1    Settlement Payment.**

   (A)    The Settlement Payment shall only be used for payments referenced in Section 1.23; no other payments shall be made from the Settlement Payment.

   (B)    Defendant shall deposit the Initial Payment of one million one hundred thousand dollars and zero cents ($1,100,000.00) into the Escrow Account by the First Funding Date (*i.e.*, within thirty (30) calendar days of the Order Granting Preliminary Approval). The Claims Administrator will distribute these funds within thirty (30) calendar days after the Order Granting Final Approval.

   (C)    The Claims Administrator shall send Class Counsel and Defendant's Counsel copies of the quarterly bank statements for the Escrow Account.

   (D)    Within twelve (12) months of the First Funding Date, Defendant shall deposit into the Escrow Account the Second Payment. The Claims Administrator will distribute these funds within thirty (30) calendar days of receipt of said funds.

   (E)    Within twenty-four (24) months of the First Funding Date, Defendant shall deposit into the Escrow Account the Third Payment. The Claims Administrator will distribute these funds within thirty (30) calendar days of receipt of said funds.

   (F)    Any interest accrued from the Escrow Account, net of taxes and any fees incurred for the Escrow Account, shall immediately be added to and become part of the Net Settlement Fund.

   (G)

       (i)    The Claims Administrator will make an initial distribution of the money in the Escrow Account by making the following payments:

           (a)    Fully reimbursing Class Counsel for all costs and expenses approved by the Court, as described in Section 3.2(A); and

           (b)    Fully paying Service Awards in the amounts approved by the Court, as described in Section 3.3.

       (ii)    Once the above payments have been made, the Claims Administrator will then distribute the remaining funds in the Escrow Account by paying:

    (a) Class Counsel Court-approved attorneys' fees as described in Section 3.2(A); and

    (b) Claimants their Final Individual Settlement Amounts as described in Section 3.5.

  (iii) The percentage of the total distributed to Class Counsel and to Claimants in paragraph (ii) above shall be calculated so that Class Counsel and Claimants each receive the same percentage of their total payments. Notwithstanding the foregoing, the percentages received by Class Counsel and Claimants may vary by up to 0.1%. For example, if Class Counsel receives 40.1% of their total fees in the initial distribution then each Claimant will receive between 40.0% and 40.2% of his or her Final Individual Settlement Amount.

  (iv) The Claims Administrator shall make three (3) distributions, one after the Initial Payment, one after the Second Payment, and one after the Third Payment, as described in Sections 3.1(B), 3.1(D), and 3.1(E).

(H) In the event that Defendant fails to make any payment when due hereunder, Class Counsel will provide notice to Defendant's Counsel via e-mail (estolzer@bsk.com). If said payment failure remains uncured for ten (10) business days, Lead Plaintiffs shall have the right to move for enforcement of the Agreement by the Court. Nothing in this Agreement is intended to eliminate any available remedies for a breach of this Agreement.

**3.2** **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of their reasonable litigation costs and expenses not to exceed One Hundred and Ten Thousand Dollars and No Cents ($110,000.00) from the Settlement Fund. In addition, Class Counsel shall petition the Court for no more than one-third of the after-costs Settlement Fund as an award of attorneys' fees. Defendant will not oppose such applications. Defendant shall have no additional liability for attorneys' fees and costs to Class Counsel and the Class.

(B) The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. The amount of any reduction by the Court of Class Counsel's application for costs/expenses or attorneys' fees shall become part of the Net Settlement Fund.

**3.3** **Service Awards.** Prior to the Fairness Hearing, Lead Plaintiffs will apply to the Court to award up to a total of Sixty Thousand Dollars and No Cents ($60,000.00) in Service Awards for the Service Award Plaintiffs for services rendered to the

Class.  Any Service Awards approved by the Court shall be paid in addition to the Service Award Plaintiffs' Final Individual Settlement Amounts.  All amounts for both the Service Awards and Final Individual Settlement Amounts shall be paid out of the Settlement Fund.  The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.  The amount of any reduction by the Court of Lead Plaintiffs' application for Service Awards shall become part of the Net Settlement Fund.

**3.4   Late and Disputed Claims.**

(A)   On or before the Claim Form Deadline, Class Members may dispute their hours paid for working and/or allocation based on the settlement formula, and individuals who were erroneously not identified as Class Members may submit a good faith claim for participation in the Class.  The Claims Administrator shall advise Class Counsel and Defendant's Counsel of any such disputes within eighty-two (82) calendar days of the Mailing Date.  Within fourteen (14) calendar days, the Parties shall jointly decide, after a good faith conference and research into their dates and hours paid for working, whether such individuals may participate in the Settlement, and whether their allocation based on the settlement formula should be corrected (if applicable).  If accepted, such individuals shall be considered Claimants for all purposes under this Agreement.  The Claims Administrator shall make any necessary adjustments and calculate the Final Individual Settlement Amounts at least seven (7) calendar days before distributing any payments to the Claimants.

(B)   The Claims Administrator shall notify Class Counsel and Defendant's Counsel if any Claim Forms are sent after the Claims Form Deadline.  If the Parties jointly agree in writing, any late Claims Form may be accepted and treated as timely.

**3.5   Distribution to Class Members.**

(A)   The Net Settlement Fund shall be allocated as set forth below.

  (i)   Each Class Member will receive one point for every hour paid for working – as reflected in Defendant's payroll records' column titled "subtotprdhrs" - during the Covered Period while employed by Defendant as a CNA.

  (ii)   The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Class Members ("Point Value").

  (iii)   Each Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

(B)   All Unclaimed Funds in excess of the Threshold Amount shall revert to/remain with Defendant as a reversion.  All Unclaimed Funds below the Threshold Amount shall be retained in the Net Settlement Fund and distributed to all

Claimants, on a pro rata basis based on their Individual Settlement Amounts in accordance with the payment schedule in Section 3.1(B),(D), (E).

(C) The amount of Unclaimed Funds retained in the Net Settlement Fund and distributed to Claimants shall be capped at an amount that keeps the Settlement Payment at Three Million Fifty Thousand Six Hundred Sixty Dollars and No Cents ($3,050,666.00).

(D) Any checks issued under this Agreement that are not cashed within one hundred and eighty (180) calendar days shall be void. Fifty percent of the value of such uncashed checks, shall revert to Defendant and fifty percent shall be used to make *cy pres* awards. All *cy pres* awards shall be mutually agreed to by the Parties. In the event that the parties cannot agree on a *cy pres* beneficiary, the Lead Plaintiffs and Class Counsel shall select the recipient(s) of 50% of said *cy pres* awards and Defendant shall select the recipient(s) of the other 50% of the *cy pres* awards. Lead Plaintiffs, Class Counsel and Defendant may only select recipients that are tax exempt pursuant to Section 501(c)(3) of the Internal Revenue Code.

**3.6  Taxability of Settlement Payments.**

(A) For tax purposes, the payments to Class Members pursuant to Section 3.5 will be allocated as follows:

   (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting. The Claims Administrator shall make all deductions and withholdings required by law, including federal, state and local income tax withholding and the employee's share of any employment taxes, such as FICA.

   (ii) 50% in consideration for liquidated damages and interest as non-wage payments subject to 1099 reporting as required by law.

(B) Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. These amounts shall be reported to the Internal Revenue Service as required by law.

(C) Any Service Award payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099 as required by law.

(D) With respect to the amounts treated as wages pursuant to Section 3.6(A), FICA tax and any federal and state or local taxes due that are required by statute, rule or regulation to be borne by employers shall be paid by Defendant. The Claims Administrator shall be responsible for making all withholdings from Claimants' settlement payments as required pursuant to any federal, state, or local tax law or regulation, with respect to the amounts treated as wages pursuant to Section 3.6(A).

(E) Each individual Claimant will be solely responsible for all of his or her taxes, interest, and penalties due with respect to any payment received by him or her pursuant to this Agreement (other than taxes specified in Section 3.6(D)). Lead Plaintiffs, on behalf of the Class, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

(F) Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section.

(G) All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.

**3.7 Release.**

(A) **Release of Class Claims.** Upon the Order Granting Final Approval, and except as to such rights or claims as may be created by this Agreement, each Class Member (including Lead Plaintiffs), on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, and agents, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, shareholders, officers, directors, managerial and supervisory employees, members, employees who meet the definition of an employer under the Fair Labor Standards Act or the New York Labor Law with regard to one or more Class Members, co-joint ventures, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them ("Releasees"), from any wage and hour and recordkeeping-related claims under the New York Labor Law (including the Wage Theft Prevention Act), and any applicable related rule, regulation or Wage Order, whether known or unknown, through the date of execution of this Agreement, including but not limited to state law claims for overtime, unpaid wages, failure to provide accurate wage statements, interest, liquidated damages, and attorneys' fees and costs related to such claims.

(B) **Release of FLSA Claims.** In addition, each Claimant and any other Class Members who receive and cash a check sent pursuant to this Agreement forever and fully releases the Releasees from all Fair Labor Standard Act claims, whether known or unknown, through the date of the Order Granting Preliminary Approval, including, but not limited to, claims for overtime, unpaid wages, liquidated damages, and attorneys' fees and costs related to such claims.

(C) **Intentionally Left Blank.**

(D) **Release of Fees and Costs for Settled Matters.** Class Counsel and Lead Plaintiffs, on behalf of the Class and each individual Class Member and Claimant, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of the Class, and the Claimants in this Litigation. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals in this Litigation. Lead Plaintiffs and Class Counsel warrant and represent that they are not aware of any liens and/or pending legal claims applicable to the Settlement Fund. Each Lead Plaintiff agrees to defend, indemnify and hold harmless the Defendant against any lien, claim or action asserted against or related to his or her portion of the Settlement Amount. Each Lead Plaintiff also agrees that he or she will be solely responsible to satisfy any liens or claims asserted against the Defendant as against or related to his or her portion of the Settlement Amount.

(E) **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Lead Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Lead Plaintiffs, Claimants, and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative, or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

**3.8   Option to Void.**

(A) Within thirty (30) calendar days after the Claims Administrator provides Class Counsel and Defendant's Counsel the information set forth in Section 2.7, Defendant has the option to void this Agreement if the Settlement Payment exceeds Three Million Fifty Thousand Six Hundred Sixty-Six Dollars and No Cents ($3,050,666.00) or if more than thirty-nine (39) Class Members opt out of the Settlement. If Defendant wishes to exercise its right provided for herein, Defendant shall notify Mediator Martin Scheinman and Class Counsel in writing of its intent to exercise its option. Thereafter, the Parties shall endeavor in good faith to schedule a mediation session with Mediator Scheinman within sixty (60) calendar days to try to reach another mutually agreeable resolution with the assistance of Mediator Scheinman. If the Parties are unable to reach such a

resolution after such mediation session, Defendant may exercise its option to void the Agreement.

(B) Within thirty (30) calendar days after the Claims Administrator provides Class Counsel and Defendant's Counsel the information set forth in Paragragh 2.7, Defendant or Lead Plaintiffs have the option to void this Agreement if fewer than 15% of the Class Members submit Claim Forms. If Defendant or Lead Plaintiffs wish to exercise their right provided for herein, such Party shall notify Mediator Scheinman and opposing counsel in writing of their intent to withdraw. Lead Plaintiffs may only exercise this option jointly. Thereafter, the Parties shall endeavor in good faith to schedule a mediation session with Mediator Scheinman within sixty (60) calendar days to try to reach another mutually agreeable resolution with the assistance of Mediator Scheinman. If the Parties are unable to reach such a resolution after such mediation session, the notifying Party may exercise its option to void the Agreement.

(C) If this Agreement is voided by any Party under Section 3.8(A) or 3.8(B), then the Claims Administrator shall transmit any money in the Escrow Account to Defendant within fourteen (14) calendar days of the date on which the Claims Administrator received notice from Defendant's Counsel or Class Counsel that the Agreement has been voided.

**3.9 Miscellaneous.**

(A) **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C) **Binding Effect.** This Agreement shall be binding upon the Parties and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(D) **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated the principal terms and conditions of this Agreement at arms' length, during two mediation sessions before Martin F. Scheinman, Esq. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

(E) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(F) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

(G) **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(H) **Continuing Jurisdiction.** The Parties shall request that the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to increase Defendant's payment obligations hereunder.

(I) **Waivers, etc. to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment and approved by the Court. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(J) **When Agreement Becomes Effective; Counterparts.** Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Court's entering an Order Granting Final Approval. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Lead Plaintiffs and Defendant had signed the same instrument.

(K) **Facsimile and Email Signatures.** In the event that any signature is delivered by facsimile transmission or by email delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation for the executing party (or the party on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original signature page.

**CLASS COUNSEL:**

DATED: April 13, 2018

By: _____
David Harrison, Esq. & Julie Salwen, Esq.
HARRISON, HARRISON & ASSOCIATES, LTD.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
(718) 799-9111
*Attorneys for Lead Plaintiffs and the Class*

**LEAD PLAINTIFFS:**

DATED: 4/13/18, 2018

By: _____
**Yudelka Perez**

DATED: 4/15/18, 2018

By: _____
**Maritza Cortes**

**DEFENDANT:**

DATED: _____, 2018

_____

By: _____

On behalf of Defendant Isabella Geriatric Center, Inc.

**CLASS COUNSEL:**

DATED: _____, 2018

By: _____
David Harrison, Esq. & Julie Salwen, Esq.
HARRISON, HARRISON & ASSOCIATES, LTD.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
(718) 799-9111
*Attorneys for Lead Plaintiffs and the Class*

**LEAD PLAINTIFFS:**

DATED: _____, 2018

By: **Yudelka Perez**

DATED: _____, 2018

By: **Maritza Cortes**

**DEFENDANT:**

DATED: June 6th, 2018

By: *Alexander Balko* (signed)

On behalf of Defendant Isabella Geriatric Center, Inc.